IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AMY L. BORGER, | CASE NO. 3:20-CV-01930-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Amy L. Borger filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 28, 2020, pursuant to Local Rule 72.2, this matter was referred to a magistrate judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** in part and **REVERSE** in part the decision of the Commissioner and **REMAND** for further proceedings consistent with this Report and Recommendation.

1

## PROCEDURAL BACKGROUND

Ms. Borger filed for DIB on November 29, 2017, alleging a disability onset date of February 28, 2016.[1] (Tr. 251, 427, 452-53). Her claims were denied initially and on reconsideration. (Tr. 452-490). She then requested a hearing before an administrative law judge. (Tr. 507-08). Ms. Borger (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on March 26, 2019. (Tr. 422-57). In a July 10, 2019 written decision, the ALJ found Ms. Borger not disabled. (Tr. 254-69). The Appeals Council denied Ms. Borger's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 7-10; *see* 20 C.F.R. §§ 404.955 & 404.981). Ms. Borger timely filed this action on August 28, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

Ms. Borger, with her counsel, appeared at an administrative hearing before an ALJ on March 26, 2019; also present was the VE. (Tr. 416-51).

Ms. Borger stated she is married and lives with her husband and her 16-year-old stepson. (Tr. 422). Ms. Borger has a driver's license but does not drive because it is difficult for her to sit in the car for a long time, and because she has difficulty using her right arm. (Tr. 423).

Ms. Borger last worked in 2016, as a piston dye inspector at Celina Aluminum. (Tr. 423-24). In that position, she was required to lift about 25 pounds. (Tr. 424). Ms. Borger also

---

[1]     Documentation at the initial and reconsideration stages indicate a disability onset date of February 11, 2015. (Tr. 452-53, 471). However, Ms. Borger's counsel indicated to the ALJ that this date was incorrectly recorded, and the correct date was February 28, 2016. (Tr. 427). In the decision, the ALJ used February 28, 2016 as the onset date. (Tr. 251).

previously worked as a waitress and would lift 10 to 15 pounds in that position. (Tr. 424-25). She worked in temporary positions, in shipping and receiving and in assembly line production. (Tr. 425-26). Ms. Borger also had experience working as a general manager at Arby's and supervised 15 employees. (Tr. 426-27). She was required to lift up to 30 pounds in that position. (Tr. 427). Finally, Ms. Borger worked as a cashier and as a clerical worker at Hutchins Food Group. (Tr. 427). This position permitted Ms. Borger to sit and stand to complete her duties as a cashier. (*Id.*).

Ms. Borger testified she left her position at Celina Aluminum due to an on-the-job injury. (Tr. 428-29). She slipped on oil and tore the ligaments in her right foot. (Tr. 429). At the time of the hearing, she was still receiving physical therapy treatments for this injury. (*Id.*).

Ms. Borger testified she is not able to work a full work schedule of 8 hours a day, 40 hours a week due to the swelling in her legs and her back pain. (Tr. 430). Ms. Borger has bad circulation in her left leg; her leg swells and remains that way. (Tr. 433). She must change position all the time. (Tr. 430). Ms. Borger has had stents placed in her legs twice. (*Id.*). Ms. Borger is treated for arthritis and gout by her family doctor, Dr. Kline. (Tr. 433). Ms. Borger believes her back pain stems from around when she gave birth to her children or to a fall in 2013. (Tr. 430). She was in traction and attended physical therapy. (Tr. 430-31).

Ms. Borger testified she also has severe symptoms of fibromyalgia, gastroparesis, and anxiety. (Tr. 431). Dr. Kline treats Ms. Borger's fibromyalgia. (434). Ms. Borger has pain in her arm, shoulder, and neck, but tests have been inconclusive as to the origin. (Tr. 435). The gastroparesis is "unbearable to live with;" Ms. Borger experiences burning and pain in her side, constant nausea, diarrhea, vomiting, and constipation. (Tr. 431). Ms. Borger is bedridden some

days as a result of these symptoms. (*Id.*). She receives treatment from a specialist at the Cleveland Clinic. (Tr. 432).

Ms. Borger has a history of blood clots; she is treated by a hematologist, Dr. David Powell. (Tr. 442). Ms. Borger testified she must limit certain treatments due to her Factor V (a clotting disorder) diagnosis; she has difficulty reducing the swelling in her ankles because she cannot take anti-inflammatories. (Tr. 435). Ms. Borger must elevate her legs, wear a TENS hose, and take blood thinners to prevent clots due to her Factor V diagnosis. (Tr. 439-40). She stays reclined with her legs up about three-quarters of the day. (Tr. 440). Her doctors have advised against injections or surgery for her back pain due to the Factor V issue. (*Id.*). Ms. Borger is also unable to treat her pain with massage or chiropractors due to Factor V. (Tr. 441).

Ms. Borger also testified as to her mental health. She sees a counselor for depression, anxiety, bipolar, and post-traumatic stress disorder (PTSD). (Tr. 438). She was hospitalized as an adult for PTSD. (*Id.*). Ms. Borger testified she is too scared to leave her home and cannot concentrate due to the effects of her diagnoses. (Tr. 438-39).

The VE then testified. The VE identified Ms. Borger's past work as:

- Fast food manager (DOT[2] 185.137-010): SVP[3] 5, light per the DOT but medium as performed;

- Dye inspector (DOT 601.281-022): SVP 8, medium, medium as performed;

- Shipping and receiving worker (DOT 219.367-030): SVP 4, light, light as performed;

---

[2] The *Dictionary of Occupational Titles*, published by the Department of Labor. 20 C.F.R. § 404.1566(d).

[3] "SVP" stands for "Specific Vocational Preparation" and refers to the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010).

- Production line solderer (DOT 813.684-022): SVP 2, light, light as performed;

- Waitress (DOT 311.477-030): SVP 3, light, light as performed;

- Cashier II (DOT 211.462-010): SVP 2, light, light as performed; and

- Clerical worker (DOT 203.582-054): SVP 4, sedentary, sedentary as performed.

(Tr. 444-45).

The ALJ then posed a hypothetical to the VE:

Assume an hypothetical individual with the same age, education, and work experience as the claimant. . . . Assume a range of light work except she can occasionally climb ramps and stairs. She can occasionally climb ladders, ropes or scaffolds. She can occasionally balance, stoop, crouch, kneel and crawl. She can never be exposed to unprotected heights or dangerous machinery. With respect to understanding, remembering and carrying out instructions she is limited to performing simple routine and repetitive tasks but not at a production rate pace. With respect to the use of judgment she is limited to simple work-related decisions. There should be no more than occasional changes in the work place desk and sitting and any changes should be well explained in advance.

(Tr. 445). The VE testified all of Ms. Borger's past work would be eliminated based on this hypothetical, except for the Cashier II position. (Tr. 445-46). However, the hypothetical individual could perform the following jobs, all classified as light exertional level:

- Housekeeper (DOT 323.687-014): SVP 2, 230,000 jobs in the national economy;

- Garment sorter (DOT 222.687-014): SVP 2, 70,000 jobs in the national economy; and

- Merchandise marker (DOT 209.587-034): SVP 2, 280,000 jobs in the national economy.

(Tr. 446).

The ALJ then limited the hypothetical individual to "occasional contact with supervisors and occasional and superficial contact with coworkers and members of the

public. Superficial contact means verbal interaction is not necessary for the completion of assigned duties." (*Id.*). The VE testified again that past work is eliminated based on that hypothetical. (Tr. 446-47). However, the hypothetical individual could still perform the jobs previously identified. (Tr. 447).

The ALJ then limited the individual in the first hypothetical to sedentary work. (*Id.*). The VE responded that the limitations eliminated all past work, but the hypothetical individual could perform the following jobs:

- Address clerk (DOT 209.587-010): SVP 2, 60,000 jobs in the national economy;

- Document preparer (DOT 249.587-018): SVP 2, 100,000 jobs in the national economy; and

- Table worker inspector (DOT 739.687-182): SVP 2, 60,000 jobs in the national economy.

(Tr. 447). The hypothetical individual could still perform these jobs when limited as in the second hypothetical. (Tr. 447-48).

The VE also testified that ordinary breaks include two fifteen-minute breaks and a thirty-minute lunch based on an eight-hour workday. (Tr. 448). Missing one day or more per month beyond the allotted sick time or vacation time would subject the individual to reprimand or dismissal. (*Id.*). The VE confirmed that the testimony was consistent with the DOT, and consistent with human resources managers regarding breaks, absenteeism, and off-task behavior. (Tr. 448-49).

Ms. Borger's counsel then cross-examined the VE. (Tr. 449). The VE testified that employers would not accommodate an individual who needs access to the bathroom on an hourly to hour-and-a-half basis. (*Id.*). An employee is expected to be able to complete the standards of the workday as provided by the employer. (*Id.*).

6

## II.    PERSONAL AND VOCATIONAL EVIDENCE

Ms. Borger was 44 years old on the alleged onset date of her disability; she was therefore defined as a younger individual age 18-44. (Tr. 261; *see also* 20 C.F.R. §§ 404.1563). Ms. Borger had past relevant work as a fast-food manager, die inspector, shipping and receiving worker, production line solderer, waitress, cashier, and a clerical worker; this work was "substantial gainful activity" under the Act, was performed long enough for Ms. Borger to achieve average performance, and was performed within the relevant period. (Tr. 267; *see also* 20 C.F.R. § 404.1565). Given her residual functional capacity ("RFC"), her past relevant work could no longer be performed. (*Id.*). Accordingly, Ms. Borger was unable to perform past relevant work. (*Id.*).

## III.    RELEVANT MEDICAL EVIDENCE[4]

**State Agency Psychologists.** Ms. Borger's file was reviewed by State agency consultants Karen Terry, Ph.D., and Karla Delcour, Ph.D. (Tr. 452-82). In her review on March 10, 2018, Dr. Terry noted Ms. Borger could perform her activities of daily living ("ADLs") with breaks. (Tr. 460). Dr. Terry also noted that Ms. Borger has had some improvement in her symptoms through

---

[4]    Ms. Borger raises error with the ALJ's treatment of the State agency psychologists' opinions and with the ALJ's consideration of Ms. Borger's non-severe impairments, namely, fibromyalgia, deep vein thrombosis ("DVT") and venous insufficiency. (Pl.'s Br., ECF #15, PageID 6441-46). As such, she waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).

Ms. Borger also raises error with the ALJ's handling of her multiple non-severe impairments, including degenerative disc disease, obstructive sleep apnea, right ankle pain, and abdominal pain. (*Id.* at 6444). Because these impairments are only mentioned in passing and are not developed, I focus my review only to the State agency psychologists' opinions, fibromyalgia, DVT, and venous insufficiency. *See United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *see also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). I also note that the record in Ms. Borger's case is extensive and spans thousands of pages; my summary here is intended to provide a sufficient foundation for review, based on the parties' briefings, but it is not comprehensive.

medication management, but she continues to experience breakthrough psychiatric symptoms. (*Id.*). Dr. Terry found that Ms. Borger's reports of isolating herself and having panic attacks were supported and consistent with the other evidence contained in her file. (Tr. 461). Dr. Terry opined that Ms. Borger's bipolar and anxiety diagnoses moderately limited her ability to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage herself. (Tr. 460). Dr. Terry found that Ms. Borger's impairments did not limit her ability to understand, remember, or apply information. (*Id.*). Dr. Terry found that despite Ms. Borger's breakthrough psychiatric symptoms, Ms. Borger could perform tasks that did not have strict production quotas, could relate to others on a superficial basis, and could perform job duties in a routine, stable, and predictable work setting without frequent changes. (Tr. 464-65).

Dr. Delcour reviewed Ms. Borger's file on April 26, 2018 and affirmed Dr. Terry's assessments. (*See* Tr. 470-84).

**Deep Vein Thrombosis.** Ms. Borger has a history of DVT[5] and venous insufficiency[6] in her left leg. (Tr. 943-57, 1064-66, 1129-31, 1298-99, 1334, 1557-3011-38). Ms. Borger has had multiple DVT episodes due to her Factor V Leiden mutation.[7] (Tr. 3260-91). She regularly attends the

---

[5]      DVT is a blood clot that forms in a vein deep in the body, often in the lower leg or thigh. *Deep Vein Thrombosis*, *MedlinePlus*, *National Library of Medicine*, https://medlineplus.gov/deepveinthrombosis.html (Nov. 3, 2021). Sitting for long periods of time increases the likelihood of DVT. *Id.* Pain and swelling in the affected area are symptoms of DVT. *Id.* DVT treatments include anticoagulants, keeping the affected area raised, and walking or stretching one's legs. *Id.*

[6]      Venous insufficiency is a condition in which vein walls are weakened and valves are damaged, causing the veins to stay filled with blood, especially when standing. *Venous insufficiency*, *MedlinePlus*, *National Library of Medicine*, https://medlineplus.gov/ency/article/000203.htm (Nov. 30, 2021). Venous insufficiency can be caused by DVT. *Id.*

[7]      Factor V Leiden is a specific gene mutation resulting in thrombophilia, an increased tendency to form abnormal blood clots that can block blood vessels. *Factor V Leiden thrombophilia*, *MedlinePlus*, *National Library of Medicine*, https://medlineplus

Grand Lake Health System Anticoagulation Clinic to monitor her condition. (*See, e.g.*, Tr. 1292-97, 1302-03, 1305, 1312-13, 1339-40).

On November 12, 2014, Ms. Borger presented to the emergency room complaining of left calf pain, swelling, and increased warmth. (Tr. 943-57). Ms. Borger was treated by Katie J. Ball, PA-C and Manuel Patricio, M.D. (*Id.*). Dr. Patricio noted Ms. Borger's history of DVTs and that she had not been taking coumadin as prescribed. (*Id.*). A venous Doppler ultrasound of her left leg was negative for DVT. (Tr. 946). Dr. Patricio restarted Ms. Borger on 5 mg of coumadin daily and recommended she follow up with her primary care physician the next day. (Tr. 947).

Ms. Borger's primary care physician, Leanne Kline, M.D., referred Ms. Borger to David Powell, D.O., for treatment of her "hypercoagulable state." (Tr. 1304). In treatment notes from April 9, 2015, Dr. Powell recounted Ms. Borger's first DVT was in 2012, with another in November 2014. (*Id.*). Although Ms. Borger had left leg pain, a February 27, 2015 Doppler was negative for a clot; Dr. Powell indicated the pain was likely due to post phlebotic neuralgia. (*Id.*). A March 2015 hypercoagulable panel confirmed Ms. Borger's genetic mutation; as a result, Ms. Powell requires lifelong anticoagulation treatment. (Tr. 1304-05). Dr. Powell recorded that Ms. Borger's grandmother died at 55 from a thrombus/pulmonary embolism. (Tr. 1304).

On September 28, 2015, Ms. Borger attended an appointment with Dr. Kline, complaining of left leg pain. (Tr. 1064-66). Dr. Kline noted that Ms. Borger was at goal for her coumadin and had no current suspicion for DVT. (Tr. 1066). Dr. Kline attributed the leg pain to

---

.gov/genetics/condition/factor-v-leiden-thrombophilia/ (Aug. 18, 2020). People with the Factor V Leiden mutation have a higher-than-average risk of developing DVT. *Id.*

Ms. Borger's chronic venous insufficiency. (*Id.*). Dr. Kline's notes referenced an upcoming vascular surgery in January 2019. (*Id.*).

Ms. Borger has had multiple procedures to treat her bilateral lower extremity venous insufficiency and treats with Sukir Sinatthamby, M.D., at Varicose to Perfect. (Tr. 1129, 1131, 1298-99). Ms. Borger had a left great saphenous vein endovenous laser treatment on December 29, 2015; a left small saphenous vein endovenous laser treatment on January 17, 2016; and a right great saphenous vein endovenous laser treatment on May 10, 2016. (Tr. 1129). Ms. Borger also had stents placed in her left leg. (*Id.*). A May 17, 2016 letter indicated that Ms. Borger experienced improvement after these procedures but still had swelling and discomfort in both legs. (*Id.*).

On March 18, 2017, Ms. Borger presented to the emergency department complaining of left knee pain and she was admitted to the hospital. (Tr. 3256-3301). An ultrasound found a DVT within the left posterior tibial vein. (Tr. 3258, 3260). Ms. Borger was taking coumadin; treatment notes indicate this was the second DVT Ms. Borger had while on coumadin, and her third DVT episode since 2011. (Tr. 3260, 3269). Although on coumadin, the dosage was subtherapeutic due to her Factor V Leiden mutation. (Tr. 3264, 3274-78). After a hematologist consult, Ms. Borger's prescription was changed to Xarelto (rivaroxaban). (*Id.*). Ms. Borger was discharged on March 21, 2017. (Tr. 3263-68). Notes indicate Ms. Borger's sister had recently died of pulmonary emboli. (Tr. 3274).

On April 3, 2018, Dr. Sinnathamby ablated Ms. Borger's bilateral great saphenous veins and left small saphenous vein. (Tr. 3022-38). The treatment was successful and there was no evidence of DVT after the procedure. (*Id.*). Post-procedure treatment plan included a referral for

possible neuropathy, continuing conservative therapy to include compression, leg elevation, exercise (30 minutes walking), and applying warm moist heat. (Tr. 3030).

**Fibromyalgia.** At an August 1, 2016 appointment, Ms. Borger complained of chronic pain "everywhere" with headaches, bruising easily, and paresthesia. (Tr. 1652-53). Dr. Kline diagnosed Ms. Borger with possible fibromyalgia due to unexplained chronic diffuse pain not attributable to her back pain. (Tr. 1652-57). Dr. Kline referred Ms. Borger to a Dr. Flaugher, a rheumatologist, for further diagnosis and treatment. (Tr. 1658). Treatment notes from September 8, 2016 indicate Ms. Borger had an appointment scheduled with a rheumatologist in October. (Tr. 1666, 1669). An October 11, 2016 assessment indicated Ms. Borger had diffuse joint pain and symptoms consistent with fibromyalgia. (Tr. 1678). Dr. Kline started her on Cymbalta to get better control of her symptoms. (*Id.*).

On September 30, 2016, Ms. Borger received treatment from New Day Pain Management Center for fibromyalgia, venous insufficiency, bulging disc, and pinched nerves in her back. (Tr. 5438-49). Physical examination at this appointment noted negative bilateral straight leg tests. (Tr. 5448). Palpation revealed bilateral tender spots with trigger points in an L4-L5 distribution, extending down into the piriformis and gluteal musculature. (*Id.*). Compression of the sacroiliac joint was painful on both right and left sides. (*Id.*). Ms. Borger's motor strength was good and sensation intact. (*Id.*).

On October 25, 2016, Dr. Flaugher ordered a number of tests to rule out rheumatoid arthritis, hepatitis B, ankylosing spondylitis, and Sjogren syndrome. (Tr. 2752-71).

On January 16, 2017, Ms. Borger attended a visit with Dr. Kline as her one-month fibromyalgia follow up. (Tr. 1823). Dr. Kline's notes indicate her rheumatologist, Dr. Flaugher, started her on Savella (SNRI) one month prior. (*Id.*). Ms. Borger's fibromyalgia symptoms had not improved, but Dr. Kline indicated Ms. Borger had not been on medication. (*Id.*). Dr. Kline

11

prescribed Lyrica and instructed Ms. Borger to stop taking Savella. (Tr. 1827). Ms. Borger's

symptoms had not improved by February 15, 2017. (Tr. 1829).

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.  The claimant has not engaged in substantial gainful activity since February 28, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: dysfunction of the knees status post bilateral reconstructive surgery, obesity, affect and anxiety disorders (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally balance, stoop, crouch, kneel, and crawl. She can never be exposed to unprotected heights or dangerous machinery. The claimant is limited to performing simple, routine and repetitive tasks, but not at a production rate pace. She is limited to simple work-related decisions. There should be no more than occasional changes in the workplace tasks and setting, and any changes should be well explained in advance.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on June 21, 1971 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 253-63).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if

substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

14

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Ms. Borger raises two errors: first, the ALJ failed to account for all the limitations deemed credible from the State agency psychologists; and second, the ALJ did not properly consider all of Ms. Borger's medically determinable impairments, resulting in a faulty RFC. (Pl.'s Br., ECF #15,

15

PageID 6441-46). The Commissioner responds that the ALJ adequately evaluated the opinions of the State agency reviewing psychologists, and that the ALJ properly considered Ms. Borger's DVT condition at Step Two of the sequential evaluation. (Comm'r's Br., ECF #16, PageID 6458-64).

For the reasons that follow, I find the ALJ properly evaluated the opinions of the State agency reviewing psychologists, but did not properly evaluate all of Ms. Borger's impairments at Step Two, resulting in an RFC not appropriately responsive to her abilities. I therefore recommend the District Court affirm the Commissioner's decision in part and reverse in part, and remand for further proceedings.

**I.      The ALJ properly evaluated the opinions of the State agency reviewing psychologists.**

Ms. Borger raises error with the ALJ's treatment of the State agency reviewing psychologists, stating that the ALJ failed to account for all the limitations deemed credible in their opinions. (Pl.'s Br. ECF #15, PageID 6441-43). Specifically, Ms. Borger argues the psychologists' opinions require Ms. Borger have a job setting that is routine, stable, and predictable. (Pl.'s Reply Br., ECF #17, PageID 6473; *see also* Tr. 464-65, 480-81). According to Ms. Borger, the ALJ's limitation to "simple and routine tasks with no more than occasional changes in workplace tasks and setting, with any changes well-explained in advance" does not incorporate a routine, stable, and predictable work setting and is not responsive to Ms. Borger's mental impairments. (Pl.'s Reply Br., ECF #17, PageID 6474).

In response, the Commissioner argues the ALJ is not required to adopt all assessed limitations, even if the ALJ finds the opinions persuasive. (Comm'r's Br., ECF #16, PageID 6458-59). Further, the RFC determination is a legal issue reserved for the ALJ, and Ms. Borger has shown no glaring inconsistencies between the opined limitations and the RFC determination. (*Id.*

at 6460-62). Without more, Ms. Borger has not carried her burden to show how the alleged error was harmful and requires reversal. (*Id.*). I agree with the Commissioner.

Because Ms. Borger filed her application after March 27, 2017, her case is evaluated under the regulations found in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b); 416.920c(b). The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical demands of work activities, the ability to perform mental demands of work activities, the ability to perform other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2).

The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *Id.* at §§ 404.1520c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors"—supportability[8] and consistency.[9] *Id.* at §§ 404.1520c(b). An ALJ must explain how the ALJ

---

[8]    "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[9]    "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors. *Id.*; *see also* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The determination of an individual's RFC is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). But even so, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ may rely on the limitations contained in a medical opinion when forming the RFC, but is not required to adopt all opined limitations, even if he finds the opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 269 (6th Cir. 2015).

Ms. Borger argues the ALJ's RFC limitation to "simple, routine and repetitive tasks, but not at a production rate pace," "simple work-related decisions," and "no more than occasional changes in the workplace tasks and setting, and any changes should be well explained in advance" (Tr. 257) does not appropriately incorporate the State agency psychologists' opined limitation to "a routine, stable, and predictable work setting that doesn't undergo frequent changes." (Pl.'s Reply Br., ECF #17, PageID 6473; *see also* Tr. 464-65, 480-81). She attempts to support this argument by stating that the ALJ's "occasional changes in the workplace tasks and setting" is separate from and inconsistent with the opined need for a stable and predictable work setting. (Pl.'s Br., ECF #15, PageID 6442-43).

This argument is without merit. The ALJ's decision to use different phrasing than that opined by the State agency psychologists creates no harm for Ms. Borger and does not constitute reversible error. I recommend the District Court affirm the Commissioner's decision as to the mental limitations contained in the RFC.

## II.     The ALJ did not properly evaluate Ms. Borger's medically determinable impairments, resulting in an RFC not supported by substantial evidence.

Ms. Borger argues the ALJ did not consider all her medically determinable impairments at Step Two of the sequential evaluation process. (Pl.'s Br., ECF #15, PageID 6444-46). Because the ALJ failed to classify a number of Ms. Borger's impairments as severe, they were unincorporated in the RFC, constituting reversible error. (*Id.* at 6446).

The Commissioner responds that the ALJ did consider Ms. Borger's DVT, found it non-severe, and incorporated her symptoms of leg pain in the RFC. (Comm'r's Br., ECF #16, PageID 6461-64). The Commissioner also argues that only the DVT issue was properly raised, and that Ms. Borger waives her argument with respect to all other medically determinable impairments at Step Two. (*Id.* at PageID 6461, n.4).

### A.     Ms. Borger has not waived argument with respect to her DVT, venous insufficiency, and fibromyalgia claims.

Initially, I agree in part with the Commissioner that Ms. Borger has waived argument on certain claims. Ms. Borger has waived her argument as to her degenerative disc disease, obstructive sleep apnea, right ankle pain, and abdominal pain. These impairments are only mentioned in passing, as a group, with no further development of the argument. As such, Ms. Borger has waived her arguments as to these conditions. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we decline to formulate arguments on Hollon's behalf. . . . Rather, we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal").

I disagree, however, with the Commissioner's assertion that Ms. Borger has waived argument as to her fibromyalgia and venous insufficiency. While Ms. Borger could have put more "flesh on the bones" of her argument, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), she has provided enough direction for this Court to review her claims. (*See* Pl.'s Br., ECF #15, Page

19

ID 6444-45) ("the ALJ acknowledged that Ms. Borger was being treated for fibromyalgia, but declared that the impairment was not a medically determinable impairment . . . . The ALJ's failure to proper [sic] classify these impairments constitutes reversible error. . ." and "Ms. Borger suffers from medical impairments that were not addressed by the ALJ at Step Two of the sequential evaluation process. Perhaps of most importance, is Ms. Borger's history of deep vein thrombosis and venous insufficiency."). I therefore review Ms. Borger's Step Two claims as to her DVT, fibromyalgia, and venous insufficiency below.

### B.    The ALJ did not properly consider Ms. Borger's medically determinable impairments, resulting in an RFC not supported by substantial evidence.

At Step Two of the sequential evaluation process, the ALJ considers the claimant's impairments to establish whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii).

First, the ALJ must consider whether the claimant has a medically determinable impairment, *i.e.*, an impairment resulting from anatomical, physiological, or psychological abnormalities, shown by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1). If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC. *See Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(2).

Second, the ALJ considers whether the medically determinable impairment is severe. A severe impairment is one that significantly limits the claimant's ability to perform basic work

activities, and must result in death or must last or be expected to last at least 12 consecutive months. 20 C.F.R. §§ 404.1509, 404.1520(d).

Step Two severity regulations have been construed as a *de minimis* hurdle for the claimant to clear in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Under these regulations, an impairment is determined "not severe" if it does not "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To clear this *de minimis* hurdle, the claimant must demonstrate more than a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862; *see also* SSR 85-28. The severity regulation is intended only to "allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28 (quoting *Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985)).

However, an ALJ's failure to find a severe impairment where one exists is harmless error where the ALJ determines the claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). This rule is predicated on the premise that the ALJ considers both severe and non-severe limitations and their effects on the claimant to create an RFC that meaningfully considers the claimant's remaining capacity for work. *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015). If an ALJ finds a severe impairment at Step Two, all impairments—severe and non-severe—must be considered when determining the claimant's RFC at Step Four. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

The ALJ is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Agency regulations direct the ALJ's RFC assessment to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. SSR 96-8p. Only where "there is no allegation of a physical or mental limitation . . . and no information in the case record that there is such a limitation or restriction" is an ALJ directed to find no RFC limitation or restrictions. *Id.*

An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The RFC determination must be based on all relevant medical and other evidence, including limitations resulting from other symptoms, such as pain. 20 C.F.R. § 404.1545(a)(3).

The ALJ retains the duty to "weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly." *Skinner v. Sec'y of Health & Hum. Servs.*, 902 F.2d 447, 448 (6th Cir. 1990). It is the limited role of this court to determine whether there is substantial evidence in the record, taken as a whole, to support the findings. *Id.* Even so, substantial evidence must support the Commissioner's RFC finding. *Berry,* 2010 WL 3730983, at *8. The failure to find a medically determinable impairment severe at Step Two may be harmless error if later incorporated into the RFC at Step Four. But an ALJ's failure to follow

agency procedures is not harmless error when it prevents this Court's meaningful review. *Id.*; *see also Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018).

Here, I conclude the ALJ failed to consider all of Ms. Borger's alleged impairments. At Step Two, the ALJ discussed only Ms. Borger's DVT and fibromyalgia diagnoses. (Tr. 254-55). The ALJ's decision makes no mention of Ms. Borger's chronic venous insufficiency diagnosis. (*See id.*).

Furthermore, the ALJ's assessment of DVT does not indicate whether this condition was a medically determinable impairment, nor whether it was severe or non-severe. The ALJ's decision states:

> The record reflects a history of recurring deep venous thrombosis (DVT) in the left lower extremity through 2014. The claimant was on Coumadin after the first diagnosis, but was not taking it regularly when she developed the subsequent one. A lower extremity Doppler test in 2015 was normal. However, in 2017 she had a third EVT and was found to have Factor 5 Leiden mutation that requires that she take a more aggressive approach, specifically with Plavix and Xarelto (Exhibit 26F/54). Subsequent studies in 2018 were negative for DVT.

(Tr. 254).

The ALJ's opinion also did not consider the effects of DVT in the RFC (despite the Commissioner's argument to the contrary). The ALJ's RFC assessment does reference leg pain and swelling, but only in the context of Ms. Borger's back pain or knee replacement surgery. (*See* Tr. 258-59). For example, the ALJ's decision states:

> [t]he claimant asserts she is unable to work eight hours in a day or forty hours in a week because her legs swell and she cannot sit long due to back pain, as a result of which she needs to sit on a recliner or lie on her bed with her legs elevated (Testimony). There is no medical evidence to support the need for such a restrictive lifestyle.

(Tr. 258). And, after discussing Ms. Borger's right partial knee replacement, "[h]er knee was much better with improved range of motion despite a lot of tenderness. She reported the occasional

23

swelling but not of the severity described during the hearing. Furthermore, there is no mention of the need to elevate the legs[.]" (Tr. 259).

The Commissioner's argument that the ALJ "not only acknowledged DVT as a medically determinable impairment, but he considered Plaintiff's complaints of leg pain, and noted they were accommodated by the sedentary RFC" (Comm'r's Br., ECF #16, PageID 6462) is unavailing. I note also that although Ms. Borger's DVT condition results in symptoms of leg pain, a sedentary RFC may not fully account for the specifics of this diagnosis, as her doctors prescribe walking as treatment for this condition. (*See* Tr. 3030).

"[A]rguments crafted by defense counsel are of no consequence, as it is the opinion given by an administrative agency rather than counsel's *post hoc* rationale that is under the Court's consideration." *Muniz v. Astrue*, No. 1:11-CV-00499, 2012 WL 314094, at *7 (N.D. Ohio Feb. 1, 2012) (cleaned up). In the paragraph discussing Ms. Borger's back pain, the ALJ states "the assessed residual functional capacity for sedentary work that provides for the residual effects of the claimant's severe impairments, serves to accommodate for any residual back and leg pain." (Tr. 254). As above, the ALJ does not specify whether Ms. Borger's DVT was medically determinable. And, reading the ALJ's decision, it is clear the RFC accommodated Ms. Borger's complaints of leg pain in the context of her back pain and any other severe medically determinable impairments, and did not consider her DVT diagnosis.

Although it may be possible to infer that the ALJ considered Ms. Borger's DVT diagnosis to be medically determinable but not severe, the ALJ's failure to state so explicitly impairs this Court's review. If the ALJ considered DVT not a medically determinable impairment, then failing to include it in the RFC is not error. Contrariwise, if the ALJ considered DVT a medically

24

determinable impairment, then failing to include it in the RFC is error, whether severe or non-severe. Without clear direction in the ALJ's decision, this Court cannot properly review the ALJ's decision, and I must therefore recommend remand.

As Ms. Borger asserts, she has a long history of issues with her lower extremities. (Pl.'s Br., ECF #15, PageID 6445). And although DVT and chronic venous insufficiency are interrelated conditions, they are separate diagnoses. (*See* n.6, *supra*). Ms. Borger has treated with multiple doctors for her chronic venous insufficiency condition. (Pl.'s Br., ECF #15, PageID 6445). However, the ALJ's decision does not reference the condition. Neither does the Commissioner reference chronic venous insufficiency in arguing against remand. With nothing from the ALJ regarding chronic venous insufficiency to guide this Court's review, I can only recommend remand.

Finally, Ms. Borger raises error with the ALJ's failure to "properly classify" her fibromyalgia at Step Two. (Pl.'s Br., ECF #15, PageID 6444). The Commissioner argues that Ms. Borger has waived her argument as to this claim and does not further respond. (Comm'r's Br., ECF #16, PageID 6461 n.4).

The ALJ found Ms. Borger's fibromyalgia is not a medically determinable impairment. (Tr. 255). In support, the ALJ cites to one page in the record, which indicates a differential diagnosis of fibromyalgia by Dr. Kline. (*Id.*; *see also* Tr. 1657). The ALJ stated this possible diagnosis by Dr. Kline is insufficient pursuant to SSR 12-2p and found fibromyalgia is not a medically determinable impairment. (Tr. 255). Reading the single page of evidence cited by the ALJ in context, Dr. Kline's assessment continues onto the next page, where Dr. Kline indicates she has made a referral to Dr.

Flaugher (a rheumatologist), faxed all pertinent information to Dr. Flaugher's office, and informed Ms. Borger of the referral. (Tr. 1658).

      While the claimant has the ultimate burden to establish an entitlement to benefits, the ALJ has the ultimate responsibility to ensure every claimant receives a full and fair hearing. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Social security proceedings are "inquisitorial rather than adversarial" and the ALJ is therefore charged with developing the facts. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). There is no bright-line test to determine when the ALJ has failed to fully develop the record such that it prejudiced the claimant. *Lashley*, 708 F.2d. at 1052. But where an ALJ fails to develop the record, the ALJ is without sufficient facts to make a decision and thus the decision is not supported by substantial evidence. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (collecting cases). The ALJ retains the duty to "weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly." *Skinner*, 902 F.2d at 449. It is the limited role of this court to determine whether there is substantial evidence in the record, taken as a whole, to support the findings. *Id.* But "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks*, 531 F. App'x at 641 (cleaned up).

      Collectively, the ALJ, the Commissioner, and Ms. Borger's counsel failed to reference or address any medical opinion evidence from Dr. Flaugher. Although Ms. Borger testified Dr. Kline treats her for fibromyalgia (Tr. 434), there is evidence that Ms. Borger may have received treatment for fibromyalgia from another doctor. (*See, e.g.*, Tr. 1658). While substantial evidence may support the ALJ's conclusion based on Dr. Kline's treatment notes, substantial evidence must also consider that which detracts from its weight. The ALJ's failure to inquire into the referral to Dr. Flaugher

represents a failure to develop the record. As such, the determination that Ms. Borger's fibromyalgia is not a medically determinable impairment was not supported by substantial evidence.

I therefore recommend the District Court remand with instruction for the ALJ to develop the record as to Ms. Borger's fibromyalgia diagnosis, including gathering evidence as to any medical opinion evidence or treatments from Dr. Flaugher.

### Conclusion

I recommend the District Court remand with instruction to consider Ms. Borger's DVT and chronic venous insufficiency diagnoses, explain whether they are medically determinable impairments, and whether they are severe or non-severe. I further recommend the District Court direct the ALJ to gather evidence necessary to support the decision as to these conditions, including obtaining testimony from a medical expert as to the effects of these conditions on Ms. Borger's RFC.

I further recommend the District Court remand with instruction to develop the record as to Ms. Borger's fibromyalgia diagnosis.

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB not supported by substantial evidence and recommend the decision be **AFFIRMED** in part and **REVERSED** in part**.**

Dated: December 17, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).